IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

RICHARD DOPP,                          )
                                       )
                Plaintiff,             )
                                       )
                                       )        CIV-15-244-D
v.                                     )
                                       )
RAY LARIMER, et al.,                   )
                                       )
                Defendants.            )

REPORT  AND  RECOMMENDATION

 Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil

rights action pursuant to 42 U.S.C. § 1983. The matter has been referred to the undersigned

Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  Before

the Court is the Motion to Dismiss (Doc. # 26) by Defendants Larimer, Brisolara, and Beven

and the Motion to Dismiss (Doc. # 19) by Defendant McCoy.  These Defendants have also

caused the filing of a special report consistent with <u>Martinez v. Aaron</u>, 570 F.2d 317 (10th

Cir. 1978).  Plaintiff has responded to the motions. (Docs. # 23, 30).   For the following

reasons, it is recommended that Defendants' Motions be granted.  It is further recommended

that the cause of action against Defendant Sanders[1] be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B).

I. <u>Plaintiff's Claims</u>

At the time he filed his Complaint in this action on March 9, 2015, Plaintiff was incarcerated at Davis Correctional Facility ("DCF"), a private prison in Holdenville, Oklahoma, under the custody of the Oklahoma Department of Corrections ("ODOC").[2] As Defendants, Plaintiff has named Mr. Larimer, DCF's Health Services Administrator, Ms. McCoy, ODOC's Medical Services Administrator, Dr. Sanders, who is identified as a physician providing care for DCF inmates, and Drs. Brisolara and Beven, who are identified as dentists providing care for DCF inmates.

In Plaintiff's Complaint, Plaintiff alleges in Count I that Defendants Larimer, Brisolara, and Beven were deliberately indifferent to his serious medical need for treatment for periodontal disease and gum and teeth infections. In Count II, Plaintiff alleges that Defendants Larimer, Sanders, and McCoy were deliberately indifferent to his serious medical need for treatment for headache and neck pain. Plaintiff states in Count II that he has undergone x-ray, CT scan, and MRI testing and that Defendant Sanders, a DCF physician,

---

[1] The record shows summons was issued by the Court Clerk for Defendant Sanders. However, no return of service has been filed for Defendant Sanders, and Defendant Sanders has not responded to the Complaint.

[2] Plaintiff filed a notice of change of address in July 2015 stating he had been transferred from DCF to the Cimarron Correctional Facility ("CCF"), a private prison in Cushing, Oklahoma. Both DCF and CCF are prisons owned and operated by Corrections Corporation of America, Inc. ("CCA"). CCA houses Oklahoma prisoners under a contract with the Oklahoma Department of Corrections.

advised him a bone in his neck was "protruding into his nerve cord coming up from lower extremities to brain" and the "indention in [his] nerve cord . . . was cause of neck-head aches." Complaint, at 9. He alleges Defendants Larimer and Sanders "refuse to provide [Plaintiff] with adequate medical treatment for his chronic daily head [and] neck aches" and are "delaying in providing the absolute necessary corrective surgery. . . ." Id. at 9-10. Plaintiff alleges in Count II that he advised Defendant McCoy that DCF officials "were refusing to adequately find the reason and/or a cure for his neck-spine condition," "of the repeated delays in providing him the absolute necessary corrective surgery," and the "unbearable pain [and] suffering experienced and that no medications being provided alleviates said pain." Id. at 10-11.

As relief, Plaintiff seeks monetary damages from Defendants as well as injunctive and declaratory relief in the form of "corrective surgery by competent neurosurgeon upon neck-spine related medical condition and adequate dental treatment for [Plaintiff's] periodontal disease infection of teeth and gums, and or immediate release from custody due to cruel and unusual punishment, etc." Complaint, at 6.

II. Standard of Review

A motion to dismiss may be granted when the plaintiff has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Factual allegations, as opposed to conclusory allegations, are accepted as true and viewed in the light most favorable to the nonmoving party. <u>Alvarado v. KOB-TV, L.L.C.</u>, 493 F.3d 1210, 1215 (10th Cir. 2007).

A *pro se* plaintiff's complaint must be broadly construed under this standard. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). However, the generous construction to be given the *pro se* litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991). A court evaluating a Rule 12(b)(6) motion to dismiss may consider the complaint as well as any documents attached to it as exhibits. <u>Hall</u>, 935 F.2d at 1112.

Because Plaintiff is proceeding *in forma pauperis*, the Court has a duty to screen the Complaint. <u>See</u> 28 U.S.C. § 1915(e)(2). In this initial review, the Court must dismiss any claim at any time that is found to be frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

To survive this review, a plaintiff must plead "enough facts to state a claim that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In applying this standard a court must assume the truth of all well-pleaded factual allegations in the complaint and construe them in the light most favorable to the plaintiff. <u>See</u> <u>Leverington v. City of Colo. Springs</u>, 643 F.3d 719, 723 (10th Cir. 2011).

Although a *pro se* litigant's pleadings are liberally construed, <u>Haines</u>, 404 U.S. at 520, a court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." <u>Whitney v. New Mexico</u>, 113 F.3d 1170, 1173-1174 (10th Cir. 1997). <u>See</u> <u>Yang v. Archuleta</u>, 525 F.3d 925, 927 n. 1 (10th Cir. 2008)(court reviewing *pro se* complaint does not "assume the role of advocate")(quotations and citation omitted).

## III. <u>Eleventh Amendment Immunity</u>

Plaintiff has not specified in the Complaint whether he is seeking to hold Defendants liable in their individual and/or official capacities. However, to the extent Plaintiff is seeking monetary damages against Defendant McCoy in her official capacity as a state employee, Defendant McCoy is immune from liability under the Eleventh Amendment.

States, state officials named in their official capacities, and "arms of the State" are entitled to immunity under the Eleventh Amendment unless the State has waived its immunity. <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989)(holding neither a State nor its officials acting in their official capacities are "persons" under § 1983); <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 98-100 (1984)(holding "the principle of sovereign immunity is a constitutional limitation on the federal judicial power," although a State's sovereign immunity may be waived by an unequivocal expression of waiver). Title 42 U.S.C. § 1983 does not abrogate the sovereign immunity of a State. <u>See</u> <u>Quern v. Jordan</u>, 440 U.S. 332, 345 (1979)( § 1983 does not waive States' sovereign immunity). Additionally, Oklahoma has not consented to Plaintiff's suit against its state officials in their official

capacities. See Ramirez v. Okla. Dep't of Mental Health, 41 F.3d 584, 589 (10th Cir. 1994)("Oklahoma has not waived sovereign immunity against § 1983 claims in federal district court.").

Thus, the Eleventh Amendment bars Plaintiff's § 1983 action seeking damages from Defendant McCoy in her official capacity.[3] Defendant McCoy's motion seeking dismissal of Plaintiff's cause of action against her seeking damages in her official capacity should be granted.

IV. Personal Participation

Plaintiff's only allegations concerning Defendant McCoy appear in Count II of the Complaint. There, Plaintiff alleges that he "advised Def[endant] McCoy in writing" that he was not being provided adequate medical treatment for his neck and headache pain and that he was being subjected to "repeated delays in [receiving] the absolute necessary corrective surgery" for his head/neck condition. Complaint, at 10-11.

Defendant McCoy has moved to dismiss Plaintiff's cause of action against her on the basis that Plaintiff has failed to assert the requisite personal participation required to establish liability under 42 U.S.C. § 1983 in her individual capacity.

In response to Defendant McCoy's motion, Plaintiff states that he has shown

---

[3]Although "a suit for prospective relief against state officials named in their official capacities, based upon an ongoing violation of federal law, is not considered an action against the state within the meaning of the Eleventh Amendment," Muscogee (Creek) Nation v. Okla. Tax Comm'n, 611 F.3d 1222, 1234 (10th Cir. 2010), Plaintiff has not alleged an ongoing violation of federal law.

Defendant McCoy's personal participation in the deprivation alleged in Count II. However, Plaintiff's allegation of personal participation is based solely on Defendant McCoy's response to a grievance appeal submitted by Plaintiff to Defendant McCoy in her capacity as ODOC's chief medical officer. See Plaintiff's Response (Doc. # 23), at 4 (asserting "McCoy has . . . been sufficiently notified through the prison administrative remedy process of enough facts to warrant her immediate medical intervention. . . ."), and Ex. A (copy of Defendant McCoy's response to Plaintiff's grievance appeal number 2014-1001-00242-G). ODOC's administrative grievance policy provides that grievance appeals may be submitted to "the administrative review authority or chief medical officer, whichever is appropriate . . . ." See Special Report (Doc. # 25), Ex. 4, at 12.

It is well established that "[t]he denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under §1983." Stewart v. Beach, 701 F.3d 1322, 1328 (10th Cir. 2012)(quotation omitted). Plaintiff has not alleged that Defendant McCoy personally participated in or made decisions concerning his medical treatment. Therefore, Plaintiff has failed to state a plausible claim for relief as to Defendant McCoy under 42 U.S.C. § 1983, and Defendant McCoy's Motion to Dismiss Plaintiff's claim against her in her individual capacity should be granted.

V. Res Judicata

Citing to a previous cause of action filed by Plaintiff in the District Court of Hughes County, Oklahoma, in May 2014, Defendants Larimer, Brisolara, and Beven have moved to dismiss Plaintiff's § 1983 action against them on the ground of res judicata. "The doctrine

of res judicata, or claim preclusion, precludes a party from relitigating issues that were or could have been raised in an earlier action, provided that the earlier action proceeded to a final judgment on the merits." Kinnell v. Graves, 265 F.3d 1125, 1128 (10th Cir. 2001).

Defendants assert that Plaintiff alleged the same claims in his previous action that he is alleging in the instant action and that the state district court dismissed his previous action on alternative grounds, finding that he had failed to exhaust administrative remedies prior to filing the action, that he had not complied with the notice requirements of Okla. Stat. tit. 51, § 156 concerning his alleged tort claims, and that he had not stated a credible claim for relief. A copy of the order entered in the District Court of Hughes County in Dopp v. Wilkinson, Case No. CJ-2014-51, is attached to Defendants' Motion to Dismiss, and this order confirms that the state court disposition was not a disposition on the merits of Plaintiff's claims. See Motion to Dismiss (Doc. # 26), Ex. 2. Because Defendants have not shown that the previous state court action was resolved on the merits of Plaintiff's claims, Defendants Larimer, Brisolara, and Beven's Motion to Dismiss Plaintiff's cause of action against them on the ground of res judicata should be denied.

VI. Exhaustion of Administrative Remedies

Defendants Larimer, Brisolara, and Beven alternatively move to dismiss Plaintiff's cause of action against them on the ground that Plaintiff failed to exhaust available administrative remedies concerning his § 1983 claims against them. In Counts I and II of the Complaint, Plaintiff alleges that Defendant Larimer, in his capacity as DCF's Health Services Administrator, was deliberately indifferent to Plaintiff's serious medical needs concerning

8

his periodontal disease (Count I) and headache and neck condition (Count II). In Count I, Plaintiff alleges that Defendants Brisolara and Beven, who are identified as dental providers for inmates at DCF, were deliberately indifferent to Plaintiff's serious medical needs concerning his periodontal disease.

The Prison Litigation Reform Act ("PLRA"), enacted in 1996, requires a prisoner to exhaust his or her administrative remedies prior to filing a lawsuit in federal court challenging prison conditions under 42 U.S.C. § 1983 or any other Federal law. 42 U.S.C. § 1997e(a). "[E]xhaustion requirements are designed to ... give the agency a fair and full opportunity to adjudicate their claims" before the plaintiff proceeds to file an action in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006). This mandatory exhaustion requirement, see Jones v. Bock, 549 U.S. 199, 211 (2007), applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 524, 532 (2002).

To properly exhaust administrative remedies, a plaintiff must "us[e] all steps that the agency holds out, and [do] so *properly* (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (quotation and citation omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).

Having asserted the affirmative defense of failure to exhaust administrative remedies, Defendants Larimer, Brisolara, and Beven bear the burden of proof. See Jones v. Bock, 549

U.S. 199, 215-216 (2007)(holding failure to exhaust administrative remedies is affirmative defense); <u>Roberts v. Barreras</u>, 484 F.3d 1236, 1241 (10th Cir. 2007)("We . . . hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant.").  "Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him. . . ." <u>Tuckel v. Grover</u>, 660 F.3d 1249, 1254 (10th Cir. 2011).

The four-step procedure for exhausting administrative remedies for Oklahoma inmates, including inmates like Plaintiff incarcerated in private prisons, is set forth in ODOC Policy OP-090124.  Under this administrative process, the prisoner must first attempt to informally resolve the matter with the appropriate staff member within three days of the incident. <u>See</u> Special Report, att. 3 (OP-090124) at 6-7.  If that attempt is unsuccessful, the inmate must submit a Request to Staff ("RTS") addressed to the appropriate staff member within seven days of the incident. <u>See id.</u> at 7-8.  If the inmate is still not satisfied, the inmate may file a grievance with the reviewing authority within fifteen days of the incident or of the staff's response to his RTS, whichever is later. <u>See id.</u> at 8-12.  If the inmate remains dissatisfied with the result, the inmate may appeal to the ODOC administrative review authority ("ARA") or, where appropriate, the chief medical officer within fifteen days of the reviewing authority's response. <u>See id.</u> at 12-14. After this step, the administrative procedure would be completed. <u>Id.</u> at 14.  <u>See</u> <u>Thomas v. Parker</u>, 609 F.3d 1114, 1117 (10th Cir. 2010)("The ODOC grievance process has a requirement of informal consultation with staff, then three written steps: a Request to Staff form, a formal grievance, and an appeal to the

administrative review authority.").

Defendants Larimer, Brisolara, and Beven rely on the affidavit of Ms. Underwood, DCF's Grievance Coordinator, which is attached to Defendants' Motion (Doc. # 26, Ex. 4), and also appears in the Special Report (Doc. # 25, Ex. 5). In this affidavit, Ms. Underwood avers that Plaintiff had been placed on grievance restriction prior to his transfer to DCF on May 31, 2013. Under ODOC's administrative grievance policy, a grievance restriction period of up to 12 months may be imposed upon an inmate. Special Report (Doc. # 26), Ex. 3, at 17. When a grievance restriction is imposed, the inmate must "show cause as to why they should be permitted to grieve" and the inmate must comply with specific requirements for showing cause, including the submission of a "duly verified affidavit, made under penalty of discipline for lying to staff, attached to the grievance, stating that all contents of the grievance are true and correct to the best of the offender's knowledge" and containing "a list by grievance number, date, description, and disposition at each level, of all grievances previously submitted by the offender within the last 12 months." Id. Each page of this list must be signed, verified, and notarized. If the inmate has not complied with these requirements, the reviewing authority is directed by the policy to return the grievance "for correction and written reasons for such action [must be] provided to the offender." Id.

A. Exhaustion of Administrative Remedies - Count I

With respect to Plaintiff's claims in Count I of his Complaint of deliberate indifference to his serious medical need for dental treatment, the record shows Plaintiff submitted a RTS dated August 19, 2013, to "DCF Dentist" in which he requests "an

appointment A.S.A.P. to provide me a treatment plan for periodontal disease." Motion to Dismiss (Ex. 26), Ex. 5, at 30. Attached to the RTS is a two-page document entitled "Verified Affidavit." Id. at 31-32. In response to the RTS, Plaintiff was advised by a DCF official that "[y]ou will be seen when your name comes up - there is a very long list for a cleaning." Id. at 30.

In grievance number 2013-1001-00291-G submitted by Plaintiff to DCF Warden Wilkinson in September 2013, Plaintiff asserted that he had been previously diagnosed with periodontal disease and gum and teeth infections and that he had submitted requests for dental treatment at DCF but that "responses thereto are unsatisfactory." Id. at 29. Plaintiff requested an "adequate treatment plan for offender Dopp's periodontal disease as referenced above." Id.

This grievance was returned to Plaintiff unanswered by DCF Health Services Administrator Larimer, who notified Plaintiff that he was on grievance restriction, that he had not complied with ODOC's policy governing the submission of a grievance while on grievance restriction because his affidavit was deficient, and that he had the opportunity to re-submit the grievance within 10 days of receipt of the notice. Id. at 27.

Plaintiff re-submitted the same grievance to DCF Warden Wilkinson with the same "verified affidavit" previously submitted by Plaintiff. Id. at 22-25. DCF Warden Wilkinson notified Plaintiff in a letter dated September 29, 2013, that his re-submitted grievance was being returned to him unanswered because he did not comply with ODOC's policy governing the submission of an affidavit with his grievance and that he was now "OUT OF TIME"

under ODOC's grievance policy for submitting a proper grievance. Id. at 20-21.

Plaintiff attempted to appeal this decision to ODOC's ARA. However, he was notified in a letter authored by Mr. Knutson, ODOC's Director's Designee, dated October 28, 2013, that his attempted grievance appeal was returned unanswered because he was on grievance restriction and he did not include the proper documentation with his grievance. Id. at 19. Plaintiff was advised he had a final opportunity to re-submit his grievance appeal within 10 days. Id. There is no evidence that Plaintiff re-submitted his grievance appeal to the ARA.

In response to Defendants' assertion that Plaintiff failed to exhaust available administrative remedies concerning his claims in Count I of the Complaint, Plaintiff contends that DCF and ODOC officials thwarted his ability to exhaust his administrative remedies because he was not advised as to "what needed correction on his Restriction Affidavit." Plaintiff's Response (Doc. # 30), at 8.

The grievance process established by ODOC required Plaintiff to comply with the policy's four-step grievance process and the policy's additional grievance-restriction requirements. "Once notified of deficiencies at the formal grievance stage, [Plaintiff] chose not to avail himself of the opportunity to cure them," and he "may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them." Thomas, 609 F.3d at 1118 (quotation omitted).

Plaintiff did not attempt to correct his defective affidavit to comply with the requirements of ODOC's grievance restriction policy, and the affidavit he submitted with his

grievance was replete with both unnecessary and inadequate information. The record also shows Plaintiff was aware the affidavit he submitted with grievance # 2013-1001-00291-G was deficient under ODOC's grievance restriction policy and that Plaintiff was capable of providing an affidavit that complied with ODOC's grievance restriction policy because the affidavit he submitted with a subsequent grievance, grievance # 2014-1001-00242-G, succinctly listed the grievance information required by ODOC's grievance restriction policy. See Motion to Dismiss (Doc. # 26), Ex. 5, at 40-41.

Plaintiff failed to exhaust the administrative remedies available to him with respect to his claims against Defendants Larimer, Brisolara, and Beven in Count I of the Complaint, and Plaintiff has not shown that DCF or ODOC officials obstructed his ability to complete ODOC's administrative grievance procedure. Therefore, Defendants Larimer, Brisolara, and Beven's Motion to Dismiss Plaintiff's claims against them in Count I of the Complaint should be granted.

B. Exhaustion of Administrative Remedies - Count II

Defendant Larimer asserts that Plaintiff also failed to exhaust available administrative remedies concerning his claims against Defendant Larimer in Count II of the Complaint. The record shows that Plaintiff submitted a RTS dated July 14, 2013, addressed to "DCF Physician" in which he described receiving treatment at DCF by "a female physician" for "chronic migraine headaches." Motion to Dismiss (Doc. # 26), Ex. 5, at 13. Plaintiff acknowledged that this physician prescribed pain medication for his headaches but he "request[ed] that reason for headaches be determined and treated accordingly." Id. Plaintiff

submitted a one-page notarized list of grievances with this RTS. Id. at 14. In response to this RTS, Defendant Larimer stated that Plaintiff should "submit a request for medical services." Id.

Plaintiff next submitted grievance number 2013-1001-00234-G on July 29, 2013, in which Plaintiff stated he had been treated by a "female DCF physician" for his "chronic migraine headaches" but the physician "has no intention of determining the cause or a cure" for his headaches. Id. at 12. Plaintiff requested that the reviewing authority "[d]irect DCF competent medical physician to accord necessary procedures to determine cause of migraine headaches and a cure." Id.

Warden Wilkinson notified Plaintiff on August 7, 2013, that his grievance was being returned unanswered because his affidavit was defective under ODOC's grievance restriction policy and also advised Plaintiff he had the opportunity to re-submit his grievance within 10 days. Id. at 10-11. Plaintiff subsequently re-submitted the same grievance with the same one-page notarized list of grievances, and the grievance was again returned to him unanswered because the affidavit was "still incorrect" under ODOC's grievance restriction policy. Id. at 3-7.

Plaintiff's attempted appeal of this grievance decision was returned to him with a notice that his attempted appeal had been filed improperly because he had not "properly corrected [his] affidavit" required due to his grievance restriction status. Id. at 2.

On September 1, 2014, Plaintiff submitted a RTS to Defendant Larimer in which he stated that he had undergone CT scan and MRI testing which showed "my lower neck bone

protruding into my bundle of nerves [illegible] coming up from my lower extremities to my brain," he had a previously-scheduled appointment with a neurosurgeon "that did not occur," and he "request[ed] that corrective surgery be provided as soon as possible before irreparable [sic] injury occurs." Id. at 38.  With the RTS, Plaintiff provided a verified and notarized list of his previously-submitted grievances. Id. at 40-41.

A DCF official responded to this RTS that Plaintiff had a pending appointment with OU Medical Center. Id.  In September 2014, Plaintiff submitted grievance number 2014-1001-00242-G in which Plaintiff "request[ed] that corrective surgery be provided as soon as possible before irreparable [sic] injury occurs without further delays" for his "finding of my lower neck bone protruding into my bundle of nerves . . . coming up from my lower extremities to my brain as reflected by CT scan on/or about 11-26-13 and confirmed by MRI on/or about 3-12-14." Id. at 36.

Defendant Larimer and Warden Wilkinson responded to this grievance stating that Plaintiff's "request to be given an appointment is GRANTED" and that "[a]fter an investigation of the matter, Ray Larimer, Health Services Supervisor advised that an appointment has been set for Offender Dopp at OU Medical Center." Id. at 35.

Although Defendants assert that Plaintiff did not appeal this grievance decision, with his responsive pleading Plaintiff has provided a copy of a grievance appeal decision by Defendant McCoy in her capacity as ODOC's Medical Services Administrator. Plaintiff's Response (Doc. # 30), Ex. 3.

In response to Plaintiff's grievance appeal, Defendant McCoy advised Plaintiff that

the grievance appeal was denied for the following reasons:

> Pertinent information from your electronic health record (EHR) was reviewed. According to your record, a neurosurgery clinic appointment was scheduled in July 2014. However, that appointment was cancelled and has been reschedul[ed] to the earliest available date at the clinic. However, surgery cannot be scheduled until a procedure has been recommended by a specialist and then approved by the regional provider.
> If you need further assistance with your health concerns, you must submit a "Request for Medical Services" form (attached) to the medical unit at your facility, via the sick call process.

Id.

The record demonstrates that Plaintiff exhausted administrative remedies concerning the issues raised in Count II of the Complaint, and Defendant Larimer's Motion to Dismiss this claim on the ground of failure to exhaust administrative remedies should be denied.

VII. Deliberate Indifference to Serious Medical Needs

Defendant Larimer has moved to dismiss Plaintiff's remaining claim in Count II against him on the ground that Plaintiff has failed to state a plausible claim of deliberate indifference to his medical needs.

In Plaintiff's remaining claim in Count II of the Complaint, he alleges that Defendants Larimer and Sanders violated his Eighth Amendment rights by failing to provide adequate medical care for his headache/neck condition. This claim is governed by the Supreme Court's decision in Farmer v. Brennan, 511 U.S. 825 (1994). In Farmer, the Court held that a "prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828 (internal quotations omitted).

A plaintiff claiming that prison officials have been deliberately indifferent to the prisoner's medical needs must prove two elements. The prisoner must show that, objectively, his or her medical needs were "sufficiently serious," and, subjectively, that prison official(s) acted with a "sufficiently culpable state of mind" such that the official(s) knew of and disregarded an excessive risk to inmate health or safety. Self v. Crum, 439 F.3d 1227, 1230-1231 (10th Cir. 2006)(quoting Farmer, 511 U.S. at 837). See also Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005). A medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000)(internal quotation omitted).

In this case, Plaintiff's pleadings reflect that Plaintiff is receiving ongoing medical treatment for his complaints of headache and neck pain. At the direction of DCF medical staff, Plaintiff has undergone multiple tests, including x-rays, a CT scan, and two MRI tests to evaluate his head/neck condition, and he has been scheduled for an appointment at OU Medical Center to assess the condition. Plaintiff admits he has been prescribed pain medications. He alleges that those medications have not relieved his head and neck pain. However, Plaintiff's admissions reflect that DCF medical staff have not refused to treat or even neglected his medical needs but have provided ongoing medical treatment for his symptoms. Plaintiff has not alleged that any medical examiner has recommended surgery to treat his headache and neck pain and alleged "nerve impingement."

Moreover, Plaintiff's own documentary evidence reflects that as of October 2014 he

had been rescheduled for an appointment with a neurosurgical clinic "at the earliest available date at the clinic." Plaintiff's Response, Ex. 3. Plaintiff's disagreement with the treatment being provided for his complaints of chronic head and neck pain does not state a plausible claim of a constitutional deprivation. Perkins v. Kansas Dep't of Corr., 165 F.3d 803, 811 (10th Cir. 1999)("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation").

Although a delay in providing medical care or access to medical treatment may constitute an Eighth Amendment violation, a plaintiff alleging a delay in providing medical care or access to medical treatment must show that the delay "resulted in substantial harm." See Sealock v. Colo., 218 F.3d 1205, 1210 (10th Cir. 2000). See Sealock v. Colorado, 218 F.3d 1205, 1211 (10th Cir. 2000)("If ... the medical professional knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference, it stands to reason that he also may be liable for deliberate indifference from denying access to medical care.").

Plaintiff alleges that an evaluation by an outside medical professional has been delayed, but he has not alleged that any such delay has resulted in substantial harm. Plaintiff alleges that he has chronic head and neck pain that has not been relieved by the "massive amounts" of medications prescribed by DCF medical staff to treat his pain complaints. Plaintiff's Response, at 14. This allegation is not sufficient to support an inference of substantial harm caused by delay in providing an evaluation by an outside medical

professional or deliberate indifference by Defendants Larimer or Sanders. Defendant Larimer's Motion to Dismiss Plaintiff's claim against him in Count II of the Complaint should be granted. Further, Plaintiff's claims in Count II concerning Defendant Sanders should be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendant McCoy's Motion to Dismiss (Doc. # 19) be GRANTED and that Plaintiff's cause of action against Defendant McCoy be DISMISSED with prejudice. It is further recommended that Defendants Larimer, Brisolara, and Beven's Motion to Dismiss (Doc. # 26) be GRANTED and Plaintiff's cause of action against Defendants Larimer, Brisolara, and Beven be DISMISSED without prejudice for failure to exhaust administrative remedies (Count I) and failure to state a claim upon which relief may be granted (Count II). Finally, it is recommended that Plaintiff's claims against Defendant Sanders in Count II be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

Plaintiff is advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by ___November 17th, 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues

raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ____27th____ day of ____October____, 2015.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE